[Civ. No. 3426.  Second Appellate District, Division Two.—July 5, 1921.]

## F. U. KASHIKI, Respondent, v. CALIFORNIA GROWERS AND SHIPPERS, INC. (a Corporation), Appellant.

[1] ACCOUNTING—GROWING AND MARKETING OF PRODUCTS—DISPUTED ITEM—PACKING CHARGES—EVIDENCE.—In this action for an accounting between a grower of melons and lettuce and a concern engaged in marketing them, the court was justified under the evidence in allowing the plaintiff a disputed item upon the theory that the defendant had made a double charge against him on the books, and also that the defendant was entitled to a deduction from the amount due the plaintiff for certain packing charges as provided by the contracts between them.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

H. L. Welch and Jas. W. Glassford for Appellant.

Hickcox & Crenshaw and Frederick J. Trude for Respondent.

WORKS, J.—This is an action for an accounting under the operations of the parties pursuant to two contracts between them. The contracts had to do with the growing and marketing of melons and lettuce, plaintiff contracting as a grower of such products and defendant as a concern engaged in marketing them. The accounts of the transactions between the parties were kept in the books of defendant. Plaintiff had judgment for $2,254.60 and defendant appeals.

An item of $1,000, included in the amount for which judgment was rendered, was allowed respondent upon the theory that appellant had made a double charge against him, in that amount, on its books. Appellant contends that there was no sufficient evidence of the double charge and that the trial court erred in allowing the item. The point must be resolved almost wholly upon the testimony of the president of appellant, who was the only witness sworn in the case. Both parties argue the question upon the basis of

that testimony, pointing, in support of their respective claims, to various statements made by the president. Appellant, it is true, refers to the books as having been introduced in evidence, but reproduces in its brief no entries from them which bear on this question, the appeal being under the alternative method, nor is it argued, nor does appellant say it was objected at the trial, that statements made by the witness as to entries appearing in the books were not the best evidence. After this preface, let us examine the testimony. The record shows the following, at one place:

"Mr. Hickcox [Counsel for Respondent]: . . . His books show that thousand dollars both ways. In the statement he has given us, he has charged us with that thousand dollars twice. Their books show that—

"The Witness: Here is a charge we have charged against Mr. Kashiki $1010.43. He borrowed that money on our note, with the interest, which he paid and we charged it against him. There is another thousand dollars charged against him and that was the only thousand dollars. When we borrowed money for him, we charged it against him and when he paid it, we charged this amount also against him.

"Q. (By the Court.) This is where you paid the bank note?

"A. Yes, sir; when the one thousand dollars was borrowed, it was entered on the books and that is the statement Mr. Hickcox alleges. This was where we paid the note to the bank and we charged him. If that is the case, this thousand dollars would not show here. It would be a double entry and an error of the bookkeeper. [The witness continued for a few lines upon other matters and then came back to the questioned item, thus]: We have that entry, but we cannot find a voucher for the thousand dollars. It might have been at the time we paid that one thousand dollars we took from the bank and paid it, we entered it against Mr. Kashiki and when we took up that note we entered another one thousand dollars against him. I cannot state that positively."

A page further on the record shows this:

"The Court: If that money was borrowed and charged to him and when the note was taken up and paid it was charged to him, that is a duplicate charge.

"A. The only difficulty is I cannot see exactly—there is a thousand dollars entered here that Mr. Kashiki claims he hasn't received. Whether the thousand dollars was actually given to Mr. Kashiki and when he got the money from the bank and they entered it against him and made a double charge of $1010.43, I cannot state, although I think the statement of Mr. Hickcox is correct. Personally, I think he is correct.

"The Court: It looks reasonable that that could happen.

"A. Before any judgment is entered for the full amount, I request the court to have a few days to have the bookkeeper go over it. I said I would go over the books with the court and Mr. Hickcox and then submit it for final settlement.

"The Court: We want to get this matter concluded. As I understand Mr. Hickcox's contention, the amount is $2254.60.

"Mr. Hickcox: Yes, sir, and that amount is practically agreed upon so far as any amount is agreed upon, but Mr. Glassford thinks he has a matter that should offset that."

Mr. Glassford then questioned the witness about the matter referred to by Mr. Hickcox, which was wholly apart from the question of the disputed item of $1,000.

[1] It is evident from the extracts we have made from the record that the issue as to the double charge was tried in an informal manner and in an endeavor to reach a settlement of the question in a good-natured way. It is shown by the briefs that before the president of appellant took the witness-stand the parties went over the books in an attempt to compose their differences amicably. According to one of the briefs, this process occupied nearly a day. This circumstance explains the informal manner in which the witness was examined and it explains, especially, the last three statements included in our excerpt from the record, one by the witness, one by the court, and one by Mr. Hickcox. Upon the situation thus disclosed, as a background, it is to be observed that the witness finally stated, "Personally, I think he [Mr. Hickcox] is correct"; that it plainly appears that the trial judge had the books under his eye during the testimony, an opportunity which is denied us; that the request of the witness for further time to go over the books was not followed by counsel with any demand for a continu-

ance for that purpose, and that counsel made no attempt to challenge the final statement of Mr. Hickcox, but immediately went on with an examination into the question which the latter ·had suggested as involving a possible offset against the stated total of $2,254.60. Further, when the witness was under examination as to the alleged offset, he said, "Mr. Kashiki owes us money which brings our indebtedness from $2,250 considerably down, . . . " Then the following transpired: "Q. If it hadn't been for this arrangement [involving the claimed offset] . . . you then admit you would have owed him $2,250? . . . A. Yes, sir, if that is the way I understand it." Under all these circumstances the court was amply justified in allowing the item of $1,000.

The remaining point in the case arises upon the matter which has been mentioned as a possible offset, which offset was not allowed by the trial court. A contract between the parties, referred to as the contract of 1918, provided that appellant was to advance to respondent twenty-five cents per crate for picking and hauling lettuce and was to charge him not to exceed fifty cents per crate for packing. The president of the appellant testified: "Later, Mr. Kashiki said, 'I will throw in my hauling and picking this lettuce, and you throw in your packing charges, which would make a difference from $500 to a thousand dollars.' I said, 'Kashiki, I will let you do it, provided we carry on our business for 1920,' and when that statement was made, that was our understanding, but afterward Mr. Kashiki refused to do business with us and revoked the contract." The reference to "that statement" will be better understood from an earlier portion of the testimony of the witness, where he said: "He [Kashiki] came to the office and received his statement on the basis he submitted to us and he later repudiated the contract for the 1920 crop, and on that basis we have gone back to the status of the former contract. I consented to his changing it for the reason that we would carry on business in 1920. We didn't do any business in 1920 and I think the language and understanding of the contract of 1918 should prevail."

In their brief counsel for appellant claim the offset on the ground that there was a failure of consideration for the modification of the written contract in that respondent "repudiated his agreement and failed and refused to market

any of his products of 1920 through the defendant company,'' but we do not see how such a question can arise. To say that the consideration failed is to say that the alteration of the written contract was complete, but it really never was consummated. The attempt to make the change was by parol, and the parol arrangement was wholly unexecuted on both sides. It therefore never operated, under the law, to impair the integrity of the original writing. The true situation was better expressed by the witness, arguing from the stand, than in the contention of counsel that there was a failure of consideration under a consummated agreement. The witness said, ''I think the language and understanding of the contract of 1918 should prevail.'' The situation, as it appears to us, is this: So far as the present question is concerned, the action is for an accounting under the written contract of 1918. There is nothing in the pleadings on either side upon which to base a claim that the writing had been altered by a subsequent parol agreement. At the trial, as part of his evidence in the accounting, respondent relied upon a written statement furnished him by appellant, from which charges for packing lettuce had been omitted, although they would have been proper under the contract. The witness was called upon to explain the omission and it seems to us that his explanation was complete and full, in the absence of contradictory evidence. The case must be retried, but it will be retried as to this one issue alone, which course will involve an ascertainment of the amount of the charges for packing, that amount to be subject to the deduction of any sum due respondent under the contract of 1918 for picking and hauling the lettuce. The amount thus resulting will be deducted in turn from $2,254.60, the amount of the present judgment, and a new judgment be rendered for respondent accordingly.

Judgment reversed and cause remanded for a new trial in accordance with this opinion.

Finlayson, P. J., and Craig, J., concurred.